# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| John Baltz, | Case No. 11-cv-00170 (JRT/AJB) |
| Plaintiff, | |
| v. | |
| U.S. Bancorp d/b/a U.S. Bank, | **U.S. Bank's Memorandum of Law in Support of Its Motion for** |
| Defendant. | **Summary Judgment** |

## <u>Introduction</u>

This case is yet another in a long series of cases pursued by plaintiff's counsel on behalf of clients who have suffered no actual compensable damage caused by the defendant. Because causation and damages are essential elements of a claim under the Fair Credit Reporting Act (FCRA), federal courts across the country—including several Judges of this Court—have responded to lawsuits like these by granting summary judgment against the plaintiffs. *See*, *e.g.*, *Konter v. CSC Credit Services, Inc.*, 606 F. Supp. 2d 960 (W.D. Wis. 2009); *McKinley v. CSC Credit Services, Inc.*, No. 05-02340, 2007 WL 1412555 (D. Minn. May 10, 2007) (Montgomery, J.); *Beckstrom v. Direct Merchant's Credit Card Bank*, No. 04-1351, 2005 WL 1869107 (D. Minn. August 5, 2005) (Montgomery, J.); *Schaffhausen v. Bank of Am., N.A.*, 393 F. Supp.2d 853, 859 (D. Minn. 2005) (Tunheim, J.); *Reed v. Experian Information Solutions, Inc*., 321 F. Supp. 2d 1109 (D. Minn. 2004) (Doty, J.); *Anderson v. Trans Union, LLC*, 345 F. Supp. 2d 963 (W.D. Wis. 2004); *Quinn v. Experian Solutions*, No. 02 C 5908, 2004 WL 609357 (N.D.

Ill. March 24, 2004); *Lee v. Experian Information Solutions*, No. 02 C 8424, 2003 WL 22287351 (N.D. Ill. Oct. 2, 2003).

This Court should do the same and grant summary judgment in favor of U.S. Bank on plaintiff's claims under the FCRA in this case.

### Facts

The facts below are either undisputed or are stated (as they must be, on this motion for summary judgment) in the light most favorable to the plaintiff.

## I.     The Parties.

John Baltz lives in Boca Raton, Florida, with his three children and his girlfriend. (USB App 2, Baltz Depo. 6:17, 8-9.)

U.S. Bank is a national banking association. For purposes of this motion for summary judgment, U.S. Bank does not dispute that it is a furnisher of data related to certain types of accounts, including credit-card accounts, to credit-reporting agencies (sometimes abbreviated "CRAs").

## II.    The Fair Credit Reporting Act

### A.     The Creditor's Role: Reasonableness, Not Perfection

The FCRA imposes specific obligations on furnishers of credit information such as U.S. Bank. As relevant to this case, U.S. Bank has a duty to conduct a reasonable investigation of credit information that a consumer disputes, but that duty arises only when a consumer first reports a dispute to a CRA and the CRA passes the dispute to the creditor. In other words, the FCRA does <u>not</u> apply when the consumer lodges his dispute directly with the creditor that is reporting the debt.

When a consumer notifies a CRA that he or she disputes information on his or her credit report, the CRA investigates the dispute by contacting the creditor, usually electronically through an Automated Consumer Dispute Verification ("ACDV") form. In the ACDV, the CRA tells the creditor what the consumer's dispute is and asks the creditor to investigate the information that the consumer has disputed.

When the creditor receives the ACDV from the CRA, it must conduct its own investigation, and if the investigation shows that the information that it is reporting to the CRA is inaccurate or incomplete, the creditor must report its findings to the CRA. 15 U.S.C. § 1681s-2(b)(1). After a creditor communicates this information to the CRA, it has no further responsibilities under the FCRA. 15 U.S.C. § 1681i(a). It is then up to the CRA to determine whether to revise the credit report or leave the report unchanged and report its determination to the consumer.

It is hornbook law that the FCRA is not a strict-liability statute, and it does not require perfection; rather it requires CRAs and creditors to follow reasonable procedures in discharging their substantive duties under the FCRA. *See, e.g., Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005); *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 896 (5th Cir. 1998).

### III.   John Baltz's Dispute With U.S. Bank.

Baltz's aunt opened a credit-card account with U.S. Bank around 1988. (USB App 4; Baltz Depo. 17:24; USB App 32, Buckley Depo. 50:10-11.) Sometime in the early 2000s, Baltz's aunt added him and his brother to the account. (USB App 4, Baltz Depo. 15-16.) Baltz used the card he received for "every day living." (USB App 5, Baltz Depo.

18:21.) According to Baltz, he was supposed to be merely an authorized user on the account, rather than a joint owner who was responsible for all charges. (USB App 6, Baltz Depo. 23:17.) Baltz said he did not learn that U.S. Bank considered him a joint owner of the account until after his aunt filed for bankruptcy in 2005. (*Id*. 23:21-22.)

Baltz alleges in his Complaint that U.S. Bank "illegally altered or changed the account records and put the account in the name of Plaintiff" after Baltz's aunt filed for bankruptcy. (Compl. ¶18.) U.S. Bank's records show otherwise: Baltz was added to the account well before his aunt filed bankruptcy, as evidenced by a review of statements, which show Baltz's name on them as far back as 2003. (USB App 41, Buckley Depo. 87: 11-13, 114: 4-5.) U.S. Bank no longer has a copy of the application by which Baltz was added to the account sometime prior to 2003 because its retention policy does not require keeping documents that far back. (USB App 30, 41, 49, Buckley Depo. 45:9, 87:20, 118:11-15.)

In 2005, Baltz's aunt requested information regarding how Baltz was added to the account. U.S. Bank investigated and sent Baltz and his aunt a letter explaining that it could not determine exactly when Baltz was added to the account but that he was added prior to 2003. (USB App 41, Buckley Depo. 87:11-13; USB App 97.)

U.S. Bank's representative testified that under U.S. Bank's procedures and practices, U.S. Bank would have had a form with Baltz's signature authorizing his addition to the account before U.S. Bank added him to the account. (USB App 49, Buckley Depo. 118.) The fact that the form no longer exists does not indicate deviation

from policy; it is simply a function of U.S. Bank's document-retention policy and the fact

that this lawsuit came at least eight years after Baltz was added to the account.

In 2010, Baltz disputed the account with the CRAs, claiming that it was

erroneously listed on his credit report and that he was not liable for the account. (USB

App 12, Baltz Depo. 47:21.) The CRAs then sent ACDVs to U.S. Bank, requesting that

U.S. Bank verify that Baltz was liable for the account. Experian sent U.S. Bank an

ACDV dated September 28, 2010, which U.S. Bank responded to on October 5, 2010.

(USB App 72-73, Scott Depo. 6:23-7:1.) Equifax sent U.S. Bank an ACDV in September

2010, which U.S. Bank timely responded to that same month. (USB App 120.)[1] Equifax

sent U.S. Bank an additional ACDV in March 2012, on which Equifax coded Baltz's

dispute as simply "not his or hers." (*Id*. 121.) And TransUnion sent U.S. Bank an ACDV

in September 2010, which U.S. Bank responded to on October 4, 2010. (USB App 62,

Hasenstab Depo. 42-43.) In response, a U.S. Bank employee conducted an investigation

and verified that the account belonged to Baltz. (USB App 47, Buckley Depo. 110.)

Specifically, U.S. Bank used its system records to verify Baltz's name, social security

number, and address were the same as in submitted in the ACDV. (*Id*. 110:18-20.)

**IV.    Baltz's Alleged Damages.**

At his deposition, Baltz admitted that he has not actually sought and been denied

credit. The closest that he comes is a vague allegation that he believes he was denied a

loan on an Infiniti automobile through unknown banks and thus received an unspecified

---

[1] Equifax also sent U.S. Bank an ACDV in 2007, but to the extent Baltz may argue that
the 2007ACDV supports any claim for liability against U.S. Bank, such a claim is barred
by the statute of limitations. *See* 15 U.S.C. § 1681p (two-year statute of limitations).

higher interest rate. (USB App 17, Baltz Depo. 66-67.) In October 2011, around the time he sought the loan through the Infiniti dealership, he had several other negative items on his credit report.[2] (USB App 108-10; USB 95, Scott Depo. 29:15-16.) And a year earlier, in July 2010, when the U.S. Bank account still appeared on Baltz's TransUnion credit report, there were numerous other accounts listed as "Adverse Accounts." (USB App 100-01.) Baltz admitted that he has been more than 30 days late on a credit-card payment. (USB App 14, Baltz Depo. 56:20, 23.) He also admitted that he has been contacted by a collection agency in connection with other past-due amounts. (USB App 15, Baltz Depo. 58: 17, 19.) And he admitted that he had an account closed for non-payment. (USB App 11, Baltz Depo. 43-44.)

Baltz also testified that he is concerned about using his credit (he would like to buy a house) because he is afraid of what might happen, but he concedes that he has not spoken to a mortgage broker to determine whether the U.S. Bank account would affect that goal. (USB App 17, Baltz Depo. 67:1-20.)

When asked what damages he has suffered, Baltz did not identify any actual damage or out-of-pocket expenses. Instead, he testified that he simply wants the U.S. Bank account off his credit report. (USB App 16, Baltz Depo. 64:21-24.)

With respect to his allegation that he has suffered emotional distress as a result of U.S. Bank's actions, Baltz admitted in his deposition that he has not sought or received any medical treatment as a result of his alleged emotional distress. (*Id*. 64:2.) Baltz

---

[2] Baltz's personal credit histories are included in the sealed portion of the record. U.S. Bank refers the Court to those documents to see the specific details of the adverse accounts on Baltz's credit reports.

testified generally that he has suffered stress and sleepless nights, as well as headaches and frustration. (*Id.* 62:11-14.) He testified that during this time period of stress, his mother also had cancer and the dispute with U.S. Bank "kind of added to things" during this stressful period. (*Id.* 62:17-22.) He testified that he lost sleep due to calls he allegedly received from U.S. Bank, but that those calls ended in 2007 or 2008. (*Id.* 63:4-10; USB App 9, Baltz Depo. 35:2-5.) Baltz's testimony regarding his emotional distress focused mainly on frustration due to his desire to clean up his credit but that frustration has not caused any physical harm. (USB App 17, 66:25-67:13.)

As for Baltz's claim that U.S. Bank acted intentionally (thus entitling him to seek punitive damages), Baltz provided no testimony whatsoever regarding U.S. Bank's intent.

## V.   Baltz Starts This Lawsuit.

On January 21, 2011, Baltz filed this lawsuit against U.S. Bank. Baltz claims that U.S. Bank violated a single provision of the FCRA: 15 U.S.C. §§ 1681s-2(b) (governing investigation of disputes). He asserts that U.S. Bank's alleged violations were negligent under 15 U.S.C. §§ 1681o (thus entitling him to recover actual damages) and willful under 15 U.S.C. § 1681n (thus entitling him to recover punitive damages).

## <u>Argument</u>

The FCRA was enacted primarily to combat mistaken credit reporting. But like many FCRA cases these days, this case is not about a mistake in reporting. U.S. Bank is not reporting one thing to the credit bureau while its account records say something different. It is instead a dispute about the extent of the customer's liability on a credit-card account, with the creditor and the debtor simply disagreeing about whether the

debtor was a joint debtor on the account. U.S. Bank questions whether it is proper to turn such a dispute into a federal claim under the FCRA, as opposed to resolving such disputes under conventional contract law and perhaps declaratory-judgment actions to get the debt removed. The FCRA was not intended to penalize creditors who disagree with their customers over the scope of the customer's liability.

The Court need not resolve that issue, however, as Baltz's claim fails even under the FCRA because he has no evidence that he suffered any harm caused by U.S. Bank's actions (two essential elements of a FCRA claim), and no evidence that U.S. Bank acted willfully or maliciously in considering him (and reporting him to CRAs as) a joint owner of the account in question. Thus, U.S. Bank is entitled to summary judgment.

## I.   Baltz's Negligence Claim under the FCRA Fails Because He Has No Evidence of Causation or Compensable Damages

The Court may assume for purposes of this portion of U.S. Bank's motion that U.S. Bank negligently violated the FCRA by failing to conduct a reasonable investigation when Baltz disputed U.S. Bank's report of the collection to CRAs (U.S. Bank obviously does not concede that it was negligent, but the Court may assume so for purposes of this motion just to simplify the inquiry).[3] The problem for Baltz is that just as a common-law

---

[3] The only provision of the FCRA that relates to creditors is 15 U.S.C. § 1681s-2(b), which "imposes certain duties on a creditor who has been notified by a credit-reporting agency that a consumer has disputed information furnished by that creditor." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 429 (4th Cir. 2004). Section 1681s-2(b) requires creditors, after receiving notice of a consumer dispute from a credit-reporting agency, to conduct an investigation, review all relevant information, report the results, and modify, delete or block inaccurate or incomplete information. 15 U.S.C. § 1681s-2(b). The required investigation must be reasonable. *See, e.g., Johnson*, 357 F.3d at 431; *Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005). Baltz has no evidence that U.S. Bank did not comply with these limited requirements. In fact, testimony

negligence claim requires a plaintiff to prove that the defendant's breach of a duty caused him damage (*see, e.g.*, *Anderson v. State*, 693 N.W.2d 181, 186 n.1 (Minn. 2005)), case after federal case has held that a claim under 15 U.S.C. § 1681o for negligent violation of the FCRA requires a plaintiff to prove that the defendant's violation of the FCRA caused him damage. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 670-71 (7th Cir. 2001) ("Without a causal relation between the violation of the [FCRA] and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'"); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001); *Casella v. Equifax Credit Information Services, Inc.*, 56 F.3d 469, 474-476 (2nd Cir. 1995); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51 (D.C. Cir. 1984).[4]

There is no evidence in the record that U.S. Bank's actions caused Baltz any compensable harm. Indeed, the record conclusively establishes that U.S. Bank's actions did not cause any compensable harm to Baltz. Thus, Baltz cannot establish two essential elements of his negligence claim against U.S. Bank (causation and damages), and U.S. Bank is therefore entitled to summary judgment on that claim under the FCRA. *Celotex*

---

presented by U.S. Bank establishes that U.S. Bank investigated each and every ACDV it received from Experian. (USB App 44-46, Buckley Depo. 100-102, 108:4-7; USB App 59-62, Hasenstab Depo. 31-35, 41-44.) Nevertheless, the Court may assume for sake of argument that U.S. Bank failed to conduct a reasonable investigation of Baltz's dispute to the CRAs.

[4] *Accord Smith v. Auto Mashers, Inc.*, 85 F. Supp.2d 638, 640-41 (W.D. Va. 2000); *O'Connor v. Trans Union Corp.*, 1999 WL 773504, at * 3 (E.D. Pa. Sept. 29, 1999); *King v. MTA Bridges and Tunnels*, 933 F. Supp. 220, 225 (E.D.N.Y. 1996); *Whelan v. Trans Union Credit-reporting agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994); *Wiggins v. Equifax Serv., Inc.*, 848 F. Supp. 213, 219 (D.D.C. 1993); *Houston v. TRW Information Serv., Inc.*, 707 F. Supp. 689, 693 (S.D.N.Y. 1989); *Jones v. Credit Bureau of Greater Garden City, Inc.*, 1989 WL 107747, at * 6 (D. Kan. Aug. 28, 1989).

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (Rule 56 requires summary judgment if plaintiff fails to come forward with evidence supporting every single element of his claim).

**A.     Baltz has no evidence that he suffered credit denials or received credit on unfavorable terms caused by U.S. Bank's reporting.**

Baltz's sole allegation of an unfavorable credit decision (conflated to be both a denial of credit and a receipt of credit on unfavorable terms) relates to a car loan on an Infiniti. He testified that he believes that he "couldn't get a loan with their banks with good percentage rates, APR," so he "had to go right through Infiniti with a very high interest rate." (USB App 15, Baltz Depo. 59:2-5.) The problem with this is that Baltz has offered no actual evidence of a denial or the allegedly unfavorable terms. He testified that a man at the Infiniti dealership—whose name he cannot remember—asked him about the U.S. Bank charge off, and Baltz testified that he received an interest rate of "like 14 percent" instead of "six or seven." (USB App 15-16, Baltz Depo. 61:23, 62:1.) But Baltz offers no evidence from Infiniti establishing that he was denied credit or charged a higher interest rate (and in fact has produced no evidence regarding what his actual interest rate is), and offers no evidence that, even if he was denied and received a higher interest rate, this was due to U.S. Bank's reporting, as Baltz has additional negative items on his credit report. And when asked about the interest rate he received versus what he sought, Baltz testified that he received "I believe like 14 percent," but had sought "[a]round six, six or seven." (*Id.*) But Baltz offered no evidence to support his vague recollection of either interest rate he sought or the interest rate he received.

Testimony about an anonymous man asking about the U.S. Bank account and non-specific testimony about supposedly adverse credit terms that resulted are not enough to support a jury verdict for Baltz; such a verdict would be reversed on appeal for lack of concrete evidence. "A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor." *Bass v. SBC Communications, Inc.*, 418 F. 3d 870, 872-3 (8th Cir. 2005). This evidence was readily available to Baltz: he could have obtained records or testimony from the Infiniti dealer but chose not to. That actually comes close to establishing an adverse inference <u>against</u> Baltz. But at best for Baltz, it means that he simply has no evidence of damage <u>or</u> causation to support his claims.

This case is much like *McKinley v. CSC Credit Services, Inc.*, Civ. No. 05-02340, 2007 WL 1412555 (D. Minn. May 10, 2007) (Montgomery, J.). In that case, the plaintiff alleged that he received a higher interest rate on his mortgage loan as a result of an account reporting on his credit report. *Id*. at *4. But the only evidence the plaintiff offered to establish that he received a higher interest rate was his own testimony and that of his co-worker—both mortgage loan officers. *Id*. Judge Montgomery granted summary judgment, holding that the plaintiff could not rely only on his own testimony and that of his co-worker, neither of whom were experts, even though they both worked in the mortgage-loan industry. *Id*. As the court explained, "[t]o survive summary judgment, the nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Id*.

(quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)); *see also Bass*, 418 F.3d at 872-73.

Baltz's proffered evidence—his own vague recollection—provides no more support of his claim for damages than the evidence offered by the plaintiff in *McKinley*. Baltz was not sure from which banks financing was sought, he did not produce any evidence showing that he was actually denied credit, his recollection of actual versus proposed interest rates is vague at best, and he produced no evidence showing what rate he actually received. Thus, he has offered no evidence aside from his self-serving testimony that he was denied for credit or received credit on unfavorable terms, which requires judgment in U.S. Bank's favor. *Bass*, 418 F. 3d at 872-73.

And even if Baltz's testimony could be sufficient to support his claim of damages, there is no evidence that decision is due to U.S. Bank's reporting of the account. Baltz testified that the unidentified man at the Infiniti dealership asked him only about the U.S. Bank charge off, as far as Baltz "can recall." (USB App 15, Baltz Depo. 60:5.) Baltz did not know what credit report the Infiniti dealer allegedly pulled. (USB App 15, Baltz Depo. 65:15.) In October 2011, around the time he sought the loan through the Infiniti dealership, he had other negative items on his credit report. (USB App 108-10; USB App 95, Scott Depo. 29:15-16.) And a year earlier, in July 2010, there were numerous other accounts listed as "Adverse Accounts." (USB App 100-01.) Baltz admitted that he has been more than 30 days late on a credit-card payment. (USB App 14, Baltz Depo. 56:20, 23.) He admitted he has been contacted by a collection agency in connection with other past-due amounts. (USB App 15, Baltz Depo. 58: 17, 19.) And he admitted that he had an

account closed for non-payment. (USB App 11, Baltz Depo. 43-44.) Any one—or a combination of these adverse accounts—could have been the cause of Baltz's alleged experience with Infiniti. Baltz offers no evidence that the U.S. Bank account—as opposed to the other accurate adverse information on his credit report—was the cause of the alleged negative decision or higher interest rate.

This Court came to a similar conclusion in *Schaffhausen v. Bank of America, N.A.*, 393 F. Supp. 2d 853, 859 (D. Minn. 2005) (Tunheim, J.) In *Schaffhausen*, the plaintiff relied on allegations of damages almost identical to Baltz's—that he had to pay a higher rate on a car loan. *Id.* But the plaintiff's credit report "included several other accurate derogatory remarks from [the plaintiff's] other creditors." *Id.* This Court granted summary judgment to the creditor due to the plaintiff's lack of damages evidence. *Id.* Like the plaintiff in *Schaffhausen*, Baltz "offers no evidence that the derogatory remark about the [U.S. Bank] account influenced [the Infiniti dealership's] decision in any way." *Id.*

Baltz offers no evidence to support his sole allegation of a negative credit decision or interest rate aside from his vague, self-serving deposition testimony. And even if that testimony were sufficient, Baltz offers no evidence that the alleged negative decision or increased interest rate were due to the U.S. Bank account, as opposed to the multiple other negative items on Baltz's credit report.

**B.   Baltz has no evidence of out-of-pocket losses.**

At his deposition, when asked about damages, Baltz did not claim any out-of-pocket damages caused by U.S. Bank. (USB App 16, Baltz Depo. 64-65.) He testified

that the "most important" thing he wanted was to have U.S. Bank account of his credit report. (*Id*.) At no point, despite repeated questioning regarding the harm allegedly done to him as a result of U.S. Bank's actions, did Baltz identify any out-of-pocket damages.[5] (USB App 16-17, Baltz Depo. 62-68.)

### C.   Baltz has suffered no compensable emotional damages.

Baltz's only remaining argument on damages is that he suffered "emotional distress," including "lack of concentration, headaches, frustration, anxiety . . . humiliation, mental anguish and fear of using his credit history to seek extension of credit" as a result of the alleged inaccurate reporting of the U.S. Bank account. (Compl. ¶34.) But Baltz's "evidence" of emotional distress—suffered at the same time his mother was suffering from cancer—is insufficient as a matter of federal law, as it did not result in genuine injury. Moreover, "fear of using his credit history" is not a compensable emotional distress injury. Thus, Baltz has no evidentiary basis to recover emotional-distress damages in this case.

A plaintiff seeking emotional-distress damages under federal law must prove that he or she suffered <u>physical impact</u> as a result of the alleged emotional distress. This requirement stems from the Supreme Court's holding in *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994). In *Gottshall*, the Court held that the Federal Employers' Liability Act (FELA) allows a plaintiff to recover damages for emotional distress. 512

---

[5] To the extent Baltz alleges in his Complaint that he has compensable attorney fees or loss of time, his failure to offer evidence in support of the allegations dooms the claims. (Compl. ¶34.) Furthermore, "[p]re-litigation attorneys' fees are not the sort of harm contemplated by the statute." *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (Doty, J.).

U.S. at 549-50. This conclusion was based in part on the liberal construction that the

Court has historically given to FELA, a statute that the Court remarked has always had a

"remedial goal" and a "relaxed standard of causation." *Id*. at 543. But as "pro-plaintiff"

and remedial as FELA is, the Court held that recovery for emotional-distress damage

under FELA still has limits. The Court adopted the common law "zone-of-danger" test

for recovering emotional-distress damages under FELA. That test "limits recovery for

emotional injury to those plaintiffs who sustain a <u>physical</u> <u>impact</u> as a result of a

defendant's negligent conduct, or who are placed in immediate risk of <u>physical</u> <u>harm</u> by

that conduct." *Id.* at 547-48 (emphasis added). *Gottshall* expanded on a prior Supreme

Court case, *Carey v. Piphus*, 435 U.S. 247, 263-64 & n.20 (1978), in which the Court

held that plaintiffs can recover emotional distress damages under 42 U.S.C. § 1983 only

if they have evidence of "genuine injury," such as evidence of their own conduct or the

observations of others.

   *Gottshall* and *Carey* establish general standards governing emotional-distress

claims arising under federal statutes, and federal courts have not limited those standards

to the specific statutes involved in those cases; rather, federal courts have applied these

standards to emotional distress claims arising under virtually all federal statutes—

including the FCRA. In *Cousin*, for example, the Fifth Circuit applied *Carey* in a FCRA

case and held that a claim for emotional-distress damages under the FCRA requires "a

degree of specificity which may include corroborating testimony or medical or

psychological evidence in support of the damage award." *Cousin*, 246 F.3d at 371. The

plaintiff in *Cousin* offered only her own testimony that she was "very upset, angry," that

she "felt like nobody was listening," and that she felt "trapped inside of something that [she] can't get out of." *Id.* The Circuit court held that none of that was enough to recover emotional-distress damages under the FCRA, and vacated a jury's award of such damages. *Id.*

The Fifth Circuit concluded that plaintiffs under the FCRA can recover emotional distress damages only if they demonstrate a "physical impact" as a result of the defendant's conduct, and their evidence has "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Id.* at 371.

Other federal courts, including this Court and other Judges in this District, have followed suit. *See, e.g.*, *Zean v. Unifund CCR Partners*, Civ. No. 08-1091, 2009 WL 2461723, **4-5 (D. Minn. Aug. 10, 2009) (Frank, J.); *McKinley*, 2007 WL 1412555, at *3 (dismissing claims on summary judgment where plaintiff testified to "insomnia, distraction, anger" with "physical symptoms" but no "physical injury" and submitted affidavits from friends and relatives but had not seen a health-care professional); *Beckstrom v. Direct Merchant's Credit Card Bank*, Civ. No. 04-1351, 2005 WL 1869107 (D. Minn. August 5, 2005) (Montgomery, J.) (dismissing claims on summary judgment because plaintiff's evidence, including sleepless nights, was not sufficient to establish damages); *Schaffhausen*, 393 F. Supp. 2d at 859 ("without evidence of a genuine injury, [Plaintiff's] claims for emotional distress cannot stand"); *Reed v. Experian Info Solutions, Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (Doty, J.) (dismissing claims on summary judgment because plaintiff's evidence of feeling "emotional" and "pissed" was

too vague to support claim to show damages); *but see Meyer v. F.I.A. Card Servs., N.A.*, 780 F. Supp. 2d 879, 884-85 (D. Minn. 2011) (Tunheim, J.); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1041-42 (D. Minn. 2010) (Schiltz, J.).

The Eighth Circuit has also applied *Gottshall* and *Carey* to federal statutes other than FELA and Section 1983, reversing an award of emotional distress damages in *Forshee v. Waterloo Industries, Inc.*, 178 F.3d 527 (8th Cir. 1999), on the ground that the plaintiff had introduced insufficient evidence of "genuine injury" as *Carey* requires. Specifically, the Eighth Circuit held:

> [Plaintiff] suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress. . . . We conclude that the evidence was insufficient to submit this issue to the jury. Thus, the award of . . . emotional distress damages must be reversed.

*Id.* at 531.

Baltz's emotional-distress claims in this case are equally deficient. He admitted in his deposition that he never sought any professional treatment from a medical or psychological professional for his alleged emotional distress. (USB App 16, Baltz Depo. 63-63.) And he testified that the only manifestation of his emotional distress were sleepless nights, which he did not suffer every night, and headaches, which he suffered at the same time his mother was being treated for cancer. (*Id.* 62:11-22.) This is all very far from the "physical impact" that *Gottshall* required for an emotional-distress claims based on federal law. *See* 512 U.S. at 547-48. It is virtually identical to the evidence that the plaintiff in *Forshee* offered in support of her emotional-distress claim—evidence that led the Eighth Circuit to reverse an award of emotional-distress damages in that case.

Furthermore, Baltz's allegation that he is concerned about or afraid to use his credit as a result of U.S. Bank's actions is not a compensable form of damages. Whether stated a claim for "lost credit opportunities" or simply as fear of using his credit, "'such damages are not recoverable under FCRA.'" *Schaffhausen*, 393 F. Supp. 2d at 859 (quoting *Reed*, 321 F. Supp. 2d at 1115). "Mere speculation" that Baltz would be denied credit or receive unfavorable credit "is not evidence of actual damages." *Reed*, 321 F. Supp. 2d at 1115.

And Baltz may fear using his credit, but the undisputed evidence shows that Baltz also had adverse items on his credit report related to other accounts. His argument "'boil[s] down to the bare contention that he was entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report' but [Baltz has] failed to establish a link between his concerns and the defendants' actions." *Zean*, 2009 WL 2461723, *6 (quoting *Casella*, 56 F.2d at 475). Thus Baltz's claim for emotional-distress damages fails as a matter of law and undisputed fact, and U.S. Bank is entitled to summary judgment.

In sum, Baltz: (1) has no evidence that he suffered credit denials or that he was charged a higher interest rate as a result of something U.S. Bank did; (2) has no evidence that he suffered any out-of-pocket damages; (3) has no evidence of the "physical impact" that is required to recover emotional-distress damages under federal statutes, and (4) has no evidence beyond generalized allegations of frustration, feeling down, and insomnia— at the time his mother also suffered cancer—to support his claim of emotional distress. In light of this undisputed record, Baltz has failed to carry his burden of proof on two

essential elements of his claims against U.S. Bank: causation and damages. That failure

of proof requires summary judgment in U.S. Bank's favor on Baltz's negligence claims

under 15 U.S.C. § 1681o. *Celotex*, 477 U.S. at 322-23.

## II.     Baltz's Claim for Punitive Damages and Statutory Damages Under the FCRA Fails Because He Has No Evidence That U.S. Bank Willfully Violated the FCRA.

Baltz also alleges he is entitled to damages under the FCRA because U.S. Bank

<u>willfully</u> violated the FCRA, which, if proven, would entitle him to punitive damages

under 15 U.S.C. § 1681n, even in the absence of actual damages.[6] But Baltz has not

identified any evidence to support such a claim. Nor is there any evidence that U.S. Bank

recklessly ignored its duties under the FCRA. Thus, Baltz cannot recover punitive or

statutory damages under 15 U.S.C. § 1681n as a matter of law.

Under 15 U.S.C § 1681n, "[a]ny person who willfully fails to comply with any

requirement imposed under [the FCRA]" is liable to the plaintiff for statutory damages

between $100 and $1000 and "such amount of punitive damages as the court may allow."

Statutory damages and punitive damages are not available for negligent failure to comply

---

[6] In fact, in the absence of an injury in fact, Baltz does not have Article III standing to maintain an action for a willful violation of the FCRA. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that an injury in fact is an "irreducible constitutional minimum." The Supreme Court recently heard argument in a similar case, where defendants argued that plaintiff's failure to suffer actual injuries doomed her claim for statutory under the Real Estate Settlement Procedures Act, but ultimately the Court dismissed the writ of certiorari as improvidently granted after hearing oral argument. *Edwards v. First Am. Fin. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 3022 (2011), *cert. dismissed*, --- S. Ct. ----, 2012 WL 2427807 (June 28, 2012). U.S. Bank acknowledges that other circuits have held that a plaintiff does not need to have an actual injury to state a claim for a willful violation of the FCRA. *See, e.g.*, *Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702, 705-706 (6th Cir. 2009).

with the FCRA. *See* 15 U.S.C. § 1681o (only actual damages available for negligent violation).

To establish that a defendant "willfully" violated the FCRA, a plaintiff must prove that a defendant actually knew that its conduct violated the FCRA or recklessly violated the FCRA. *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 52 (2007). "A company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. In *Safeco*, the Supreme Court held that even though the defendant had violated the FCRA, the plaintiff was not entitled to punitive damages because the defendant did not knowingly or recklessly violate the FCRA. *Id.* at 71. The Court reached this conclusion based on the fact that the defendant's interpretation of the FCRA, albeit incorrect, was not "objectively unreasonable," and thus fell "well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* at 70.

Federal courts consistently reverse awards of punitive damages in cases involving conduct far more egregious than U.S. Bank's conduct here. *See, e.g., Cousin*, 246 F.3d at 373-74 (reversing award of punitive damages where defendant deleted and then re-reported account that plaintiff had told defendant was fraudulent); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 970 (3d Cir. 1996) (finding no willful violation when inaccurate information reappeared on plaintiff's credit report after it was previously deleted by defendant and after plaintiff notified defendant about its reappearance).

20

Baltz has not brought forth any evidence that U.S. Bank acted willfully or intentionally, and in fact, Baltz has not brought forth conclusive evidence that he is not liable for the account. U.S. Bank's representative testified that Baltz was added to the account before 2003. (USB App 41, 48, Buckley Depo. 87:11-13, 114:4-5.) She testified there is no copy of the application or letter that added Baltz to the account simply because U.S. Bank's retention policy would not have retained a document that was, even at the time this lawsuit was filed, at least eight years old. (USB App 30, 41, Buckley Depo. 45:9, 87:20.) U.S. Bank's representative testified that, to her knowledge, there have not been errors made where authorized users were erroneously identified as obligors on U.S. Bank accounts. (USB App 41, Buckley Depo. 88:4-8.) And the statements produced in this matter show that Baltz was on the account as early as 2004, prior to when his aunt filed for bankruptcy, and contrary to his allegations in the Complaint. (Compl. ¶18; USB App 118; USB App 6, Baltz Depo. 25:3.) U.S. Bank investigated even the dispute that Baltz's aunt lodged directly with U.S. Bank and concluded, based on its records, that Baltz was liable for the account and had been added as a joint-account holder, not an authorized user. (USB App 41, Buckley Depo. 87:6-16.)

To the extent that Baltz may argue that U.S. Bank erroneously reported bankruptcy information in relation to the account, this cannot serve as evidence of a willful or reckless violation of the FCRA because Baltz did not dispute the bankruptcy information—he disputed his liability on the account. (USB App 119-22.)

Baltz relies in part on his allegation that U.S. Bank failed to report the account to the CRAs as disputed after U.S. Bank received the ACDVs in the fall of 2010. U.S.

Bank's representative who actually processed the ACDVs testified regarding her procedures for processing ACDVs. (USB App 60-66, Hasenstab Depo. 34-59.) She testified that she did not specifically remembering processing the ACDVs related to the account in question. (USB App 60, Hasenstab Depo. 35:7.) There is no evidence to support that, to the extent she may have made a mistake, that mistake was either willful or reckless, as inadvertent error is the epitome of non-willful conduct. U.S. Bank's representative matched the social security numbers and could see in U.S. Bank system notes that Baltz had been on the account as a responsible party since before 2003. There is simply no evidence to support an allegation that U.S. Bank acted recklessly or willfully if it violated the FCRA, and thus, U.S. Bank is entitled to summary judgment on Baltz's claim for punitive damages.

## Conclusion

Even if the Court assumes that Baltz has established that U.S. Bank failed to take actions that the FCRA requires, Baltz has failed to prove that he suffered any compensable damage as a result. Because causation and damages are essential elements of Baltz's negligence claim against U.S. Bank under the FCRA, his failure to offer any evidence of those elements means that U.S. Bank is entitled to summary judgment on Baltz's negligence claim. Similarly, Baltz also has not shown that U.S. Bank knew that it was violating the FCRA or recklessly disregarded its obligations under the statute, which is what is required for him to recover punitive or statutory damages under the FCRA. U.S. Bank therefore is entitled to summary judgment.

Dated: June 29, 2012                          **FAEGRE BAKER DANIELS LLP**


                                s/ Erin L. Hoffman

Charles F. Webber (#215247)
Erin L. Hoffman (#0387835)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000

Attorneys for Defendant
U.S. Bank National Association ND

fb.us.8782468.03